```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
RAMON CANELAS, on behalf of himself,            :
FLSA Collective Plaintiffs and the Class,       :
                        Plaintiff,              :     MEMORANDUM DECISION
                                                :
v.                                              :     13 CV 3630 (VB)
                                                :
A'MANGIARE INC., A'MANGIARE OF                  :
ELMSFORD INC., MANGIA GOURMET OF                :
BRONXVILLE INC., JOSEPH DEMATTEIS,              :
and LUIGI DOLGETTA,                             :
                        Defendants.             :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiffs Ramon Canelas, Lara Caridi, Dennise Catozella, and Salvatore DiSenso bring this action against defendants A'Mangiare, Inc., A'Mangiare of Elmsford, Inc., Mangia Gourmet of Bronxville, Inc., Joseph DeMatteis, and Luigi Dolgetta, alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").[1]

Before the Court is plaintiffs' motion for summary judgment.  (Doc. #61).

For the following reasons, the motion is GRANTED in part and DENIED in part.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

The parties have submitted briefs, statements of facts, and declarations with supporting exhibits, which reflect the following factual background.

---

[1]   Canelas initially brought this action as a putative collective and class action.  Defendants stipulated to conditional certification of a collective action under the FLSA, and three opt-in plaintiffs—Caridi, Catozella, and DiSenso—joined Canelas.  But plaintiffs never moved to certify a class under Federal Rule of Civil Procedure 23.

Defendants A'Mangiare, Inc., A'Mangiare of Elmsford, Inc., and Mangia Gourmet of Bronxville, Inc., respectively operate restaurants in Pleasantville, Elmsford, and Bronxville, New York.  Each restaurant does business under the name "A'Mangiare."

Defendant Joseph DeMatteis is the general manager and co-owner of A'Mangiare Pleasantville.  He is responsible for, among other things, hiring and firing employees, negotiating salaries, setting employee work schedules, and keeping employment records for the restaurant.  DeMatteis also co-owns A'Mangiare Elmsford and occasionally performs maintenance work there.  He is not, however, involved in A'Mangiare Elmsford's day-to-day operations, which are handled by co-owner Joseph Rabadi.

Defendant Luigi Dolgetta co-owns A'Mangiare Pleasantville and A'Mangiare Elmsford.  He also formerly owned A'Mangiare Bronxville before transferring ownership to his son, Alfredo, who manages the Bronxville restaurant.  Alfredo also occasionally works at A'Mangiare Pleasantville, where Luigi works four to five days per week.

Like DeMatteis, Luigi Dolgetta has the power to hire and fire employees and set employee compensation and work schedules at A'Mangiare Pleasantville.

Plaintiff Ramon Canelas worked as a pizza maker at A'Mangiare Pleasantville from May 2010 until August 25, 2012.  At his deposition, Canelas testified he typically worked sixty hours per week and was paid $945, partly by check and partly in cash.  But if he worked fewer hours, he made less money.  Specifically, when asked whether $945 per week "was what [DeMatteis] agreed [Canelas] would be paid," Canelas answered, "It would be that all the time or he would give me less if I worked fewer hours."  (Canelas Dep. at 21).  The lowest weekly amount he received was $850.  During weeks when he made $850, he worked fifty-two or fifty-three hours.

DeMatteis did not keep records of the hours Canelas worked. Instead, Canelas would report his hours to DeMatteis, who would pay him accordingly. DeMatteis testified he thought Canelas was paid $13 or $14 per hour, but DeMatteis could not remember the exact amount.

Plaintiff Lara Caridi worked at A'Mangiare Elmsford from August 13, 2012, to October 10, 2012.

Plaintiff Dennise Catozella worked at A'Mangiare Elmsford from October 22, 2008, to November 3, 2008.

Plaintiff Salvatore DiSenso worked at A'Mangiare Bronxville from December 11, 2002, to February 28, 2007.

Plaintiffs contend (i) Canelas was not paid overtime compensation, in violation of the FLSA and NYLL; (ii) Canelas was not paid the "spread of hours" premium required under the NYLL; (iii) Canelas is entitled to liquidated damages for those FLSA and NYLL wage and hour violations; (iv) none of the plaintiffs received wage notices and wage statements as required by the Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL; and (v) defendants are jointly and severally liable for the alleged FLSA and NYLL violations.

## DISCUSSION

I.   Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See id.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which

4

summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider admissible evidence.  Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997).

II.   Overtime

Under the FLSA and the NYLL, non-exempt employees must be paid one and one-half times their regular hourly rate for every hour worked over forty hours per week.  29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

"The fact that an employee regularly works 60 or more hours does not, without more, indicate that the employee's weekly salary was intended to include the FLSA [and NYLL] overtime premium for all hours in excess of 40."  Giles v. City of New York, 41 F. Supp. 2d 308, 316-17 (S.D.N.Y. 1999).  Instead, "[t]here is a rebuttable presumption that an employer's payment of weekly salary represents compensation for the first 40 hours of an employee's work week."  Benitez v. Demco of Riverdale, LLC, 2015 WL 803069, at *2 (S.D.N.Y. Feb. 19, 2015).  This presumption may be rebutted by evidence the employer and employee agreed the weekly salary would cover a different number of hours.  Giles v. City of New York, 41 F. Supp. 2d at 317.  Such an agreement may be inferred "from the entire course of [the parties'] conduct, based on the testimonial and documentary evidence in the record."  Moon v. Kwon, 248 F. Supp. 2d 201, 206 (S.D.N.Y. 2002).

Here, a reasonable jury could infer Canelas agreed to receive a weekly salary of $945 in exchange for working sixty hours per week, thereby rebutting the presumption his salary was intended to cover only the first forty hours of work.  Canelas testified he typically worked sixty hours per week.  When asked whether $945 per week "was what [DeMatteis] agreed [Canelas]

would be paid," Canelas said, "It would be that all the time or he would give me less if I worked fewer hours." (Canelas Dep. at 21).  Indeed, Canelas testified that when he worked fifty-two or fifty-three hours per week, he was paid $850.  If Canelas's $945 weekly salary was intended to cover only forty hours of work, there would have been no need to reduce his pay when he worked fifty-two or fifty-three hours.

Without the presumption that Canelas's weekly salary compensated him for only forty hours of work, a reasonable jury could conclude he was properly paid overtime.  DeMatteis testified Canelas was paid $13 or $14 per hour, although he was unsure of the exact rate.  If Canelas was paid $13 per hour, his salary—including overtime—would have been $910 for a sixty-hour week[2] and $773.50 for a fifty-three hour week,[3] which is less than what Canelas claimed he was actually paid.

Although plaintiffs contend Canelas could not possibly have been paid proper overtime wages because DeMatteis did not record Canelas's hours and, therefore, "could not have known how many hours Plaintiff CANELAS worked over 40 per workweek" (Reply at 4), both Canelas and DeMatteis testified Canelas reported his hours to DeMatteis, who would then pay him.  DeMatteis could, therefore, have known how many hours Canelas worked each week.

To be clear, the Court has not made a finding Canelas did, in fact, agree that his weekly salary would cover more than forty hours of work, or that Canelas was actually paid overtime wages; the Court has only determined a reasonable jury could so conclude.

---

[2]   $13 x 40 hours = $520; $13 x 1.5 x 20 overtime hours = $390; $520 + $390 = $910.

[3]   $13 x 40 hours = $520; $13 x 1.5 x 13 overtime hours = $253.50; $520 + $253.50 = $773.50.

Accordingly, plaintiffs' motion for summary judgment on Canelas's overtime claim is denied.

III.   Spread of Hours Premium

Under the NYLL, an employer must give an employee an additional hour of pay at the minimum wage for each day "on which the spread of hours [worked] exceeds 10." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6. The "spread of hours" refers to "the interval between the beginning and end of an employee's workday." Id.

Canelas testified he usually worked five twelve-hour days per week. Thus, in a typical week, he would be entitled to an extra $36.25: five hours of pay (one hour for each day working more than ten hours) at $7.25 per hour, the New York state minimum wage in effect between July 24, 2009, and December 31, 2013. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1(a).

A reasonable jury could conclude Canelas was paid the spread of hours premium. As noted above, Canelas testified he was paid $945 for working a sixty-hour week and $850 for working a fifty-two or fifty-three-hour week. To conclude Canelas was paid overtime and the spread-of-hours premium, a jury would need to conclude his hourly rate was $12.98 for a sixty-hour week,[4] and $13.68 for a fifty-three hour week.[5] DeMatteis testified plaintiff's hourly rate was $13 or $14, though he was uncertain of the exact number. Crediting DeMatteis's testimony, a reasonable jury could find Canelas was paid the spread of hours premium.

---

[4]   $945 − $36.25 (spread of hours premium) = $908.75; $908.75 / 70 (40 hours + (1.5 x 20 overtime hours)) = $12.98.

[5]   $850 − $36.25 (spread of hours premium) = $813.75; $813.75 / 59.5 (40 hours + (1.5 x 13 overtime hours)) = $13.68.

Accordingly, plaintiffs' motion for summary judgment on Canelas's spread of hours claim is denied.[6]

IV.   Liquidated Damages

Because plaintiffs have not shown, as a matter of law, Canelas was not paid overtime wages or the spread of hours premium, Canelas is not entitled to summary judgment on his claim for liquidated damages under either the FLSA or NYLL.  See 29 U.S.C. § 216(b) (employee may recover liquidated damages only against "employer who violates the provisions of section 206 or section 207 of this title," the FLSA's wage and hour provisions); NYLL § 663(1) (employee may recover liquidated damages only if employee "is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article").

Of course, if plaintiffs are able to prove at trial Canelas was not paid overtime wages or the spread of hours premium, Canelas may be able to recover liquidated damages.

V.   Wage Notices

Under the WTPA, "an employer must provide an employee with a wage notice within ten business days of the start of employment and then annually every February thereafter." Yuquilema v. Manhattan's Hero Corp., 2014 WL 4207106, at *10 (S.D.N.Y. Aug. 20, 2014), adopted, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014) (citing NYLL § 195(1)(a)).  "Prior to February 27, 2015, the WTPA allowed employees to recover, as statutory damages for violations of this wage notice requirement, $50 per work week, not to exceed $2,500."[7]  Inclan v. N.Y. Hospitality Group, Inc., 2015 WL 1399599, at *7 (S.D.N.Y. Mar. 26, 2015).

---

[6]   Although DeMatteis admitted he did not know what the spread of hours premium was, his admission does not entitle plaintiffs to summary judgment.  A reasonable jury could conclude Canelas was paid enough money per week to compensate him for the spread of hours premium.

[7]   The WPTA was amended in 2014 to allow employees to recover statutory damages of "fifty dollars for each work day that the violations occurred or continue to occur, but not to

However, an employee who began working before the WTPA took effect on April 9, 2011, may not bring a claim for an employer's failure to provide wage notices. Inclan v. N.Y. Hospitality Group, Inc., 2015 WL 1399599, at *8 ("For those plaintiffs who were hired before the WTPA took effect on April 9, 2011, the failure of the Restaurant to provide tip credit notice at the time of hiring cannot support a claim under the WTPA."); Yuquilema v. Manhattan's Hero Corp., 2014 WL 4207106, at *10 ("[N]one of the Plaintiffs here may recover under this provision of the NYLL . . . as each commenced employment prior to April 9, 2011."); Guan Ming Lin v. Benihana N.Y. Corp., 2012 WL 7620734, at *8 (S.D.N.Y. Oct. 23, 2012), adopted, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013) (holding that "only employees who did not receive a proper wage and hour notice at the time of hiring can sue for a penalty pursuant to § 198(1-b)" and because "[e]very single one of the class representatives began working before April 9, 2011 . . . none of them was entitled to receive a wage and hour notice 'at the time of hiring'").

Defendants admit plaintiffs were not provided with proper wage notices.

Accordingly, because plaintiff Caridi began working at A'Mangiare Elmsford after April 9, 2011, she is entitled to summary judgment on her wage notice claim. She may recover $400 in statutory damages, as she worked there for eight weeks (August 13 to October 10, 2012).

Canelas, Catozella, and DiSenso, however, may not collect damages, because all began working at one of the A'Mangiare restaurants before April 9, 2011.

Plaintiffs' motion for summary judgment on their wage notice claims is therefore granted as to plaintiff Caridi, but denied as to plaintiffs Canelas, Catozella, and DiSenso.

---

exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." NYLL § 198(1-b).

VI.   <u>Wage Statements</u>

The WTPA also "obligates an employer to furnish each employee with a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." <u>Yuquilema v. Manhattan's Hero Corp.</u>, 2014 WL 4207106, at *10 (citing NYLL § 195(3)). "Prior to February 27, 2015, the WTPA allowed employees to recover, as statutory damages for violations of this wage statement requirement, $100 per work week, not to exceed $2,500."[8] <u>Inclan v. N.Y. Hospitality Group, Inc.</u>, 2015 WL 1399599, at *8 (citing NYLL § 198(l-d)). But, as with the WTPA's wage notice provision, an employee may not recover for wage statement violations that occurred before April 9, 2011.  <u>See</u> <u>id</u>.

Defendants admit they failed to provide plaintiffs with proper wage statements.

Accordingly, because Canelas worked more than twenty-five weeks after April 9, 2011, without receiving proper wage statements, he is entitled to summary judgment on his wage statement claim, and to $2,500 in statutory damages.

Caridi is also entitled to summary judgment, and to $800 in statutory damages, as she worked for A'Mangiare Elmsford for eight weeks after April 9, 2011.

Plaintiffs Catozella and DiSenso, however, are not entitled to any damages, as both stopped working at A'Mangiare restaurants before the WTPA took effect on April 9, 2011.

---

[8]   The WPTA was amended in 2014 to allow employees to recover statutory damages of "two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." NYLL § 198(1-d).

VII.   Joint and Several Liability

Plaintiffs contend defendants must be held jointly and severally liable under the FLSA and the NYLL.  Because the Court has not granted summary judgment on any FLSA claim, at this time the Court will consider only defendants' joint and several liability for the wage notice and wage statement violations under the NYLL.

Under the NYLL, all parties determined to be an employee's "employer" may be held jointly and severally liable.  Dominguez v. B S Supermarket, Inc., 2015 WL 1439880, at *6 (E.D.N.Y. Mar. 27, 2015).

Plaintiffs contend that all three A'Mangiare restaurants constitute a single "employer" under the NYLL, and that DeMatteis and Dolgetta are also "employers" under the statute.

The Court addresses each argument in turn.

A.   Restaurants as Single Employer

"In determining whether multiple defendants constitute a single employer, courts consider the following factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control." Perez v. Westchester Foreign Autos, Inc., 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013).  "[N]o one factor is determinative, and, indeed, all four factors are not required." Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996) (citations omitted).  But "centralized control of labor relations," that is, whether one entity sets the employment policies and makes "decisions as to hiring, discipline, and termination" for another, St. Jean v. Orient-Express Hotels Inc., 963 F. Supp. 2d 301, 310 (S.D.N.Y. 2013) (internal quotation marks omitted), "is the most significant." Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 156 (2d Cir. 2014) (internal quotation marks omitted).  Thus, "the critical question is, what entity made the final decisions regarding employment

matters related to the [plaintiff]"?  Murray v. Miner, 74 F.3d at 405 (alterations and internal quotation marks omitted).

"Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact."  Brown v. Daikin Am. Inc., 756 F.3d 219, 226 (2d Cir. 2014).

Here, a reasonable jury could conclude the A'Mangiare restaurants were not a single employer.  There is no evidence the manager of any one restaurant established the employment policies or made "decisions as to hiring, discipline, and termination" for the other two restaurants.  St. Jean v. Orient-Express Hotels Inc., 963 F. Supp. 2d at 310 (internal quotation marks omitted).  Nor is there any evidence one of the restaurants made the "final decisions regarding employment matters related to" both Canelas and Caridi.  Murray v. Miner, 74 F.3d at 405 (alterations and internal quotation marks omitted).  Although there is evidence A'Mangiare Pleasantville and A'Mangiare Elmsford shared common owners (DeMatteis and Luigi Dolgetta), common management and ownership "often may be of limited use in determining whether to treat two or more corporate affiliates as a single employer."  Turley v. ISG Lackawanna, Inc., 774 F.3d at 156 n.14.

Accordingly, a reasonable jury could conclude none of the restaurants "had control over the labor relations of the other[s]" such that any one restaurant "bears direct responsibility for the alleged wrong[s]" committed by another.  Murray v. Miner, 74 F.3d at 405.  The Court therefore will not, at this stage of the case, treat the three A'Mangiare restaurants as a single employer.

B.      DeMatteis and Dolgetta

Courts in this Circuit consider four factors in deciding whether an individual defendant is an "employer" under NYLL: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of

employment, (3) determined the rate and method of payment, and (4) maintained employment records." Fermin v. Las Delicias Peruanas Rest., Inc., 2015 WL 1285960, at *13-14 (E.D.N.Y. Mar. 19, 2015) (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).

DeMatteis and Dolgetta were, as a matter of law, Canelas's "employers" at A'Mangiare Pleasantville. Indeed, there is no dispute DeMatteis had the power to hire and fire employees at A'Mangiare Pleasantville, he supervised and controlled work schedules there, he negotiated the rate and method of payment for the restaurant's employees, and he maintained employment records. DeMatteis also testified Luigi Dolgetta could likewise hire and fire employees and set employee compensation and work schedules at A'Mangiare Pleasantville.

There is no evidence, however, either DeMatteis or Dolgetta exercised any authority over employees at A'Mangiare Elmsford. It therefore cannot be said DeMatteis or Dolgetta were Caridi's "employers."

Accordingly, at this juncture, A'Mangiare Pleasantville, DeMatteis, and Dolgetta are jointly and severally liable for Canelas's statutory damages under the WTPA, but only A'Mangiare Elmsford is liable for Caridi's statutory damages.

## CONCLUSION

Plaintiffs' summary judgment motion is GRANTED as to (i) plaintiff Lara Caridi's claim for violations of the WTPA's wage notice provision; (ii) plaintiff Ramon Canelas's claim for violations of the WTPA's wage statement provision; and (iii) Caridi's claim for violations of the WTPA's wage statement provision. The motion is DENIED in all other respects.

Canelas is entitled to $2,500 in statutory damages.

Caridi is entitled to a total of $1,200 in statutory damages.

Defendants A'Mangiare, Inc., Joseph DeMatteis, and Luigi Dolgetta are jointly and severally liable for Canelas's statutory damages.

Defendant A'Mangiare of Elmsford, Inc. is liable for Caridi's statutory damages.

The Clerk is instructed to terminate the motion. (Doc. #61).

The parties are directed to submit a joint pretrial order in accordance with the Court's Individual Practices by June 15, 2015.

Counsel are directed to attend a status conference on July 2, 2015, at 9:30 a.m., at which time the Court will schedule a trial date and set dates for pretrial submissions.

Dated: May 14, 2015
      White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge